UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| HOMER ANTHONY PETTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:12-cv-324 |
| v. | ) | |
| | ) | *Mattice / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Homer Anthony Petty brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him supplemental security income ("SSI"). Plaintiff and Defendant have both moved for summary judgment [Docs. 15 & 17]. Plaintiff alleges the Administrative Law Judge ("ALJ") did not adequately consider Listing 12.05C, improperly relied upon VE testimony which was inconsistent with the Dictionary of Occupational Titles ("DOT"), and failed to include all Plaintiff's limitations in her mental residual functional capacity ("RFC") assessment. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 15] be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks reversal and an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 17] be **DENIED**; and (3) the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed his application for SSI on October 13, 2004, alleging disability as of October 21, 2001 (Transcript ("Tr.") 92-95). Plaintiff's claims were denied initially and upon

reconsideration and he requested a hearing before the ALJ (Tr. 74-89, 91-C). An initial hearing was held on June 18, 2007 during which Plaintiff was represented by an attorney and after which the ALJ issued a decision on August 22, 2007 and determined Plaintiff was not disabled because there were jobs in significant numbers in the economy which he could perform (Tr. 47-59). Plaintiff requested review by the Appeals Council and the Appeals Council accepted this request, reviewed the case, and remanded his claim to the ALJ for further consideration (Tr. 38-41).

Following remand, there was some difficulty reaching Plaintiff and he was unable to attend scheduled examinations due to incarceration. The ALJ held a second hearing on November 9, 2009, during which Plaintiff was represented by an attorney and the ALJ reordered examinations of Plaintiff to assist in the ALJ's review of the claim (Tr. 288-94). A third hearing was held on June 16, 2010, during which Plaintiff was again represented by an attorney (Tr. 31-63). The ALJ issued her decision on July 13, 2010 and determined Plaintiff was not disabled because there were jobs in significant numbers in the economy which Plaintiff could perform (Tr. 10-21). This time, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 4-9). Plaintiff filed the instant action on August 6, 2012 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. 2007 Hearing Testimony

Plaintiff was 36 years old at the time of the first hearing before the ALJ and had received his GED (Tr. 269). Plaintiff had last worked as a glue pumper in 1999 or 2000 (Tr. 270-71). Plaintiff had two gunshot wounds dating back to 1990, suffered a crushed hip and crushed shoulder in a motor vehicle accident in 2000, and had a neck injury from another accident in August 2006 (Tr.

2

271).  The gunshot wounds were in his left arm, and Plaintiff testified a main artery in his left arm had to be replaced with an artery from his leg, and he had subsequent problems with scar tissue in his left elbow (Tr. 275).  Plaintiff also experienced numbness that originally affected his whole arm, but was now localized to two fingers of his left hand (Tr. 275-76).  The numbness made it difficult for Plaintiff to lift or hold items (Tr. 276).

Plaintiff testified his most serious problem was with walking, which dated back to the 2000 car accident; his treatment consisted of physical therapy for his shoulder and hip and surgery where hardware was placed in his pelvis area and shoulder (Tr. 271-72, 277).  Plaintiff could not stay in any position for very long, but it just depended on the day and the weather (Tr. 273).  Plaintiff testified he was in constant pain, but the pain was worse at various times; his left shoulder hurt the most but it was generally at a seven on a scale of one to 10 (Tr. 273-74, 280).  The pain made it difficult for Plaintiff to sleep (Tr. 280-81).  Plaintiff could not lift his left arm above his head, could not lift many objects, and could only carry light objects, such as a gallon of milk, for a short distance (Tr. 274, 278).  Plaintiff used a cane for walking, but did not generally use it for short distances within his house (Tr. 274).

Plaintiff spent his days at home and sometimes would try to go outside and sit down or walk around a little bit to improve his health (Tr. 276).  He and his wife lived with his mother (Tr. 276-77).  Plaintiff did not have any hobbies he engaged in at home (Tr. 277).  Plaintiff went shopping about once a week when he was having a good day and he drove his wife to the store sometimes (Tr. 281).  He could not drive longer distances due to his hip and because he could not use his left arm to steer (Tr. 282).  Plaintiff was on medication for depression but did not feel like any medication helped for very long (Tr. 279).  As a result, Plaintiff had problems controlling his emotions at times,

had crying spells, and withdrew from others (Tr. 279-80).

The ALJ solicited the testimony of vocational expert ("VE") Katharine Bradford during the hearing. The VE testified to examples of jobs which Plaintiff could perform given the ALJ's hypothetical questions and questions posed by Plaintiff's attorney (Tr. 282-87). The hypothetical questions posed by the ALJ involved light or sedentary work with no climbing of ladders, occasional climbing of stairs and occasional crouching or balancing, limited walking, and restricted use of the left arm and shoulder for reaching and handling (Tr. 283-84). The VE provided three examples of jobs available at the light exertional level and three jobs at the sedentary level (Tr. 283-84).

### B.    2009 Hearing Testimony

At the next hearing, it was noted that there were no additional medical records for Plaintiff because he had been unable to seek medical treatment while incarcerated and had not been able to find a doctor following his release (Tr. 290-91). The ALJ stated she had ordered consultative examinations of Plaintiff, but the examinations were not done while Plaintiff was incarcerated (Tr. 291). The ALJ sought a physical examination with x-rays of Plaintiff's left shoulder, back, left arm, and left leg and also a psychological examination (Tr. 292). Plaintiff indicated consent to the examinations and they were to be rescheduled (Tr. 293).

### C.    2010 Hearing Testimony

At the third hearing, Plaintiff testified he had been in jail for 14 and a half months on charges of selling drugs, was released in September 2009, and was currently on probation for six years (Tr. 298-99). The ALJ solicited the testimony of VE Jane Hall and asked her to assume a hypothetical individual who was restricted to sedentary jobs but could not climb ladders; could only occasionally climb stairs, balance, or crouch; and could not use his left arm, shoulder and hand for reaching or

4

handling, but was right-hand dominant (Tr. 300-01). The VE testified that only one job, a receptionist, would be available at the sedentary exertional level, and there were 1,400 of these jobs in the state and 84,000 nationally (Tr. 301). In response to questions posed by Plaintiff's attorney, the VE testified there were 137 job titles at the unskilled sedentary level in the DOT, but that with the restrictions in the ALJ's hypothetical question, the hypothetical individual could perform only one of those job titles (Tr. 301-02). Plaintiff's attorney pointed out that sedentary jobs required the use of both hands, and because Plaintiff could perform only one of the unskilled sedentary jobs available, it was a significant erosion in the occupational base and would direct a finding of disabled (Tr. 302). Plaintiff's attorney next asked the VE whether the receptionist job would still be available if the individual was further restricted to simple instructions (Tr. 303). The VE testified that an individual limited to simple instructions could perform the receptionist job (Tr. 303). Plaintiff's counsel made a point about the classification of the receptionist job as potentially involving detailed instructions based on the GED rating zones, and the ALJ noted this argument (Tr. 303-05).

### D.    Medical Records[1]

Plaintiff followed with Gordonsville Clinic for depression in 2006 and 2007 (Tr. 220-22, 224, 227-30, 233-38). On March 25, 2010, Plaintiff submitted to a psychological evaluation with Stephen Hardison, M.A. (Tr. 251-57). Mr. Hardison observed Plaintiff presented as sluggish and slow thinking and seemed to have difficulty following basic instructions (Tr. 251). Plaintiff reported decreased social interaction following his 2001 car accident and recounted his recent legal troubles to Mr. Hardison (Tr. 251). Plaintiff had never received mental health treatment, but reported having

---

[1] Plaintiff does not challenge the ALJ's determination as to his physical complaints; therefore, only evidence of Plaintiff's mental impairments is summarized here [Doc. 16 at PageID# 58 n. 5].

anxiety attacks after the 2001 car accident; he did not like to be around anyone and felt like the walls were closing in on him (Tr. 252). Plaintiff reported completing the ninth grade in school and was in special reading classes; he reported barely passing the GED exam (Tr. 252). Plaintiff's daily activities consisted of watching TV, sitting on the porch, maybe vacuuming, and maybe cooking a hamburger; he drove once or twice a week to a small store, attended church sometimes, and sometimes visited his brother down the road (Tr. 252). Mr. Hardison performed testing on Plaintiff which revealed a full scale IQ of 63, word abilities at a 7.4 grade level, and arithmetic skills at a 4.9 grade level (Tr. 253). Mr. Hardison noted Plaintiff's IQ score was within the mild mental retardation classification of intelligence, but because he had obtained his GED and worked framing houses for quite some time, Mr. Hardison believed these activities suggested higher cognitive abilities (Tr. 254). Mr. Hardison further noted that although Plaintiff appeared sluggish and slow thinking, the reason for his poor performance was unclear, and it seemed likely he was capable of functioning within the borderline range intellectually (Tr. 254).

Mr. Hardison assessed Plaintiff with anxiety disorder, not otherwise specified and borderline intellectual functioning (Tr. 254). Mr. Hardison opined Plaintiff was mildly limited in his ability to remember and carry out basic one and two step instructions, complete work tasks with interruption from psychological symptoms, and respond appropriately to changes in the routine work setting; mildly to moderately limited in remembering and carrying out more detailed instructions, interacting well with coworkers, supervisors and the general public, and setting realistic goals and making very basic plans independently; and moderately limited in his ability to sustain concentration and persistence for extended periods of time (Tr. 254). Mr. Hardison further opined Plaintiff had intellectual deficits and would need to be limited to structured routine job tasks and may need

6

consistent supervision (Tr. 254).  Mr. Hardison filled out a check-box statement with these same

opinions (Tr. 255-57).

## III.    ALJ'S FINDINGS

### A.    Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following

a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The sequential process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009).  The claimant bears the burden to

show the extent of his impairments, but at step five, the Commissioner bears the burden to show that,

notwithstanding those impairments, there are jobs the claimant is capable of performing.  *See*

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B.    ALJ's Application of the Sequential Evaluation Process

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial

gainful activity since October 13, 2004, the application date (Tr. 14).  At step two, the ALJ found

7

Plaintiff had the following severe impairments: status post injury to left shoulder and left hip, status post injury to the left arm with paresthesia into the second and third fingers, gastroesophageal reflux disease, depression, and anxiety (Tr. 14). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 14). The ALJ specifically discussed her consideration of Listings 12.04 and 12.06 (Tr. 15). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except he could not climb ladders, could only occasionally climb stairs, crouch, or balance, was restricted in the use of his left arm, shoulder and hand for reaching and handling, and could only perform jobs that involved simple instructions (Tr. 15). At step four, the ALJ found Plaintiff could not perform his past relevant work (Tr. 20). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 20). This finding led to the ALJ's determination that Plaintiff was not under a disability from October 13, 2004, the application date (Tr. 21).

## IV.    ANALYSIS

Plaintiff asserts three arguments. Plaintiff first argues the evidence establishes a prima facie case that Plaintiff meets Listing 12.05 for mental retardation. Second, Plaintiff argues the ALJ failed to explain or address inconsistencies in the job identified by the VE in response to the ALJ's hypothetical question and evidence as to Plaintiff's abilities. Third, Plaintiff argues the ALJ failed to incorporate the limitations in the medical opinions to which she gave great weight and further failed to give reasons for her rejection of certain limitations, such that her RFC determination is flawed.

8

## A.     Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of

error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

## B.    Listing 12.05

In Plaintiff's first argument, he claims the psychological examiner found Plaintiff had an IQ of 63 and the ALJ found Plaintiff had five severe impairments, but the ALJ erred in failing to undertake any review of Listing 12.05C to determine if Plaintiff met the Listing for mild mental retardation [Doc. 16 at PageID# 62].  The Commissioner asserts Plaintiff has not met his burden of establishing any presumptive disability under Listing 12.05C because Plaintiff has not shown a diagnosis of mental retardation, which would suggest adaptive functioning issues also required to meet the Listing, and has not established any onset of deficits in adaptive functioning prior to age 22 [Doc. 18 at PageID# 78-80].  The Commissioner argues that Plaintiff's 2010 IQ score is not sufficient to establish deficits before age 22 and Plaintiff's history of obtaining his GED, working as a carpenter, and performing daily activities provide evidence that he has higher intellectual functioning [*id.* at PageID# 80-81].  The Commissioner contends the ALJ was not required to consider Listing 12.05C, but she discussed the evidence as to Plaintiff's mental impairments, including Mr. Hardison's evaluation, in determining Plaintiff's mental RFC and specifically noted the record lacked evidence of significant functional deficits attributable to a mental disorder [*id.* at PageID# 82].

While the ALJ explicitly referenced Listing 12.04 and Listing 12.06 in her decision, she did

not explicitly reference Listing 12.05 (Tr. 14-15).  Listing 12.05 states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 12.05.  Therefore, to qualify for Listing 12.05C, a claimant must: (1) have a valid IQ score of 60 to 70, (2) have other "severe" impairments, and (3) meet the "diagnostic description" found in the introductory paragraph of the listing (i.e., "significantly subaverage general intellectual functioning with deficits in adaptive functioning before age 22").

*Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001).

Here, Plaintiff's full scale IQ score of 63 would meet the IQ score requirement.  The ALJ also found Plaintiff had other severe impairments (Tr. 14).  The main issue, therefore, is whether Plaintiff can meet the diagnostic description for the listing.  The diagnostic description of Listing 12.05C contains three separate requirements.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  In addition to meeting the criteria in one of the sections (A, B, C, or D), a claimant must prove: (1) he suffers from "significantly subaverage general intellectual functioning," (2) he suffers from "deficits in adaptive functioning," and (3) these deficits in adaptive functioning initially manifested before age 22.  *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003).

Plaintiff's IQ score is sufficient to establish significant subaverage intellectual functioning.  The text of Listing 12.05B-D provides IQ scores with which to measure the level of intellectual functioning.  Thus, an IQ score of between 60 and 70, as provided in Listing 12.05B-D, must be

adequate to satisfy the "significant" level of subaverage intellectual functioning as required in the introductory paragraph. If a more strict level of IQ was required to satisfy the "significant" standard, the listing would exclude claimants the drafters clearly wanted to include.

There is, however, little evidence showing Plaintiff suffers from "deficits in adaptive functioning" and there is substantial evidence showing Plaintiff does *not* suffer from such deficits. A loss of adaptive functioning is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P, App'x 1 § 12.00 at C(4). Plaintiff bears the burden of showing he had "deficits in adaptive functioning" before age 22. *Foster*, 279 F.3d at 354. The Social Security Administration has yet to quantify how severe the "deficits" must be in order for a claimant to qualify as mentally retarded, *Walls v. Astrue*, 561 F.3d 1048, 1074 (10th Cir. 2009), but this Court has previously indicated the deficits must be more than "potential" or "moderate." *Payne v. Comm'r of Soc. Sec.*, No. 3:07-CV-251, 2008 WL 2894482, at *4 (E.D. Tenn. Jul. 23, 2008). The Supreme Court of the United States, quoting from the Manual of Mental Disorders, described adaptive deficits as "a person's effectiveness in areas such as social skills, communication, daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993). Activities such as cleaning, shopping, cooking, and maintaining a residence are considered "adaptive activities" under the applicable regulation. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00C(1).

The evidence in the record establishes Plaintiff was able to conduct his daily activities normally; he was able to watch TV, make basic meals, feed himself, do light cleaning, sit on the porch, visit with the family dog, drive when necessary, go to a movie occasionally, and socialize

12

with family members (Tr. 112-27, 158-65, 252). Any difficulties he has in performing personal care activities are apparently due to his physical problems (Tr. 113, 121, 159). Although Plaintiff did report problems with concentrating on reading, the substantial weight of the evidence establishes Plaintiff does not have deficits in adaptive functioning. In addition, even if there was substantial evidence in the record to support a finding that Plaintiff had deficits in adaptive functioning, there is almost no evidence in the record of these deficits manifesting before age 22. Plaintiff has stated he left school in the ninth grade, was in special reading classes,[2] and barely passed his GED exam, but Plaintiff did successfully receive his GED, and other evidence in the record would indicate that Plaintiff may have been functioning at a *higher* adaptive functioning level in the past (which would negate any deficits manifesting before age 22), as Plaintiff was able to work as a carpenter and glue pumper (Tr. 20, 104, 252).

In addition, the ALJ's failure to explicitly address Listing 12.05C is not determinative of error if, in her decision, the ALJ did consider the issues relevant to Listing 12.05C. *Alcorn v. Astrue*, No. 5:07-212-DCR, 2008 WL 1790192, at *5 (E.D. Ky. Apr. 18. 2008) (noting that the ALJ does not have to explicitly consider Listing 12.05C in its opinion, but must consider "the results of the IQ tests and the issues of mental retardation"). Thus, in order to dismiss Listing 12.05C, the ALJ would have to find that one of the listing criteria was insufficiently met. I **FIND** that the ALJ adequately considered the issues relevant to the listing, as she stated as follows:

> On the Wechsler Memory Scale-Third Edition (WAIS-III) test, the claimant scored a full scale IQ of 63, suggesting mild mental retardation. The evaluator noted, however, that the claimant's composite scores were within the borderline classification in working

---

[2] Although Plaintiff reported these special reading classes to Mr. Hardison, another form reflects that Plaintiff was not in special education classes (Tr. 107).

13

memory and verbal comprehension. Furthermore, the evaluator noted that the claimant's work history and the fact that he received a GED would suggest somewhat higher cognitive abilities than mild mental retardation. The evaluator concluded that the claimant "likely has been capable of functioning within the borderline range intellectually".
. . .
The overall record fails to show any evidence of significant functional deficits due to a mental disorder. The claimant still carries out several regular activities of daily living and there does not appear to be any significant mental limitation in this regard.

(Tr. 18-19).

Although the ALJ did not specifically reference Listing 12.05C, I **FIND** this discussion of the evidence was adequate. The ALJ noted Mr. Hardison's IQ test results and diagnosis of borderline intellectual functioning in spite of Plaintiff's low IQ score, and the ALJ further noted the record contained no evidence of significant functional deficits and that Plaintiff was able to carry out many activities of daily living such that he did not appear to be significantly limited. I **FIND** this statement indicates the ALJ did not believe Plaintiff had established deficits in adaptive functioning, which is one of the Listing requirements. Accordingly, I **CONCLUDE** the ALJ properly addressed the impact of Plaintiff's IQ score along with the other evidence in the record and did not err in failing to specifically reference Listing 12.05C.

### C.       Hypothetical Question and Identified Job

Plaintiff next argues the ALJ failed to ask the VE whether there were any inconsistencies between the testimony offered and the DOT and, even though Plaintiff's representative engaged in a discussion with the VE about an inconsistency, the ALJ never asked the VE about the inconsistency and did not adequately address it in her opinion [Doc. 16 at PageID# 63]. Plaintiff asserts the VE only identified one job in response to the ALJ's hypothetical question, but this job

14

has a General Educational Development requirement of M2 in math, which the VE testified would equate with a seventh or eighth grade math level [*id.* at PageID# 64]. The psychological examiner's testing of Plaintiff indicated a 4.9 grade level in arithmetic skills [*id.*]. As a result, Plaintiff argues the job identified by the VE has requirements which are inconsistent with Plaintiff's abilities; moreover, Plaintiff argues the DOT job description is outdated and the new description in the O*NET is even more inconsistent with Plaintiff's abilities, as it is a semiskilled job [*id.* at PageID# 64-65]. Plaintiff contends the ALJ took no action to address the inconsistencies raised during the hearing and therefore failed to meet her burden of persuasion that other jobs exist for a person with Plaintiff's RFC [*id.* at PageID# 65-66].

The Commissioner argues that even though the VE only identified one job the hypothetical individual could perform, this can still constitute significant numbers to establish work exists in the national economy [Doc. 18 at PageID# 86]. The Commissioner further argues there is no inconsistency between the VE's testimony and the DOT because the VE testified directly from the DOT and did not testify that the receptionist position would require a seventh or eighth grade math level, she testified that the position required a math level of two [*id.* at PageID# 87-88]. The Commissioner contends Plaintiff's argument with respect to O*NET is misplaced because the regulations do not recognize O*NET as an authority for occupational information; therefore, the ALJ properly relied on the VE's testimony in response to the hypothetical question [*id.* at PageID# 88]. A VE's testimony in response to a hypothetical is substantial evidence regarding the existence of jobs that the claimant can perform as long as the hypothetical question "accurately portrays [her] individual physical and mental impairments." *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The hypothetical need not include all the claimant's

15

diagnoses, but should merely reflect the claimant's RFC (as previously determined by the ALJ) as well as her vocational factors of age, experience, and education. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The VE need not identify multiple jobs to establish a "significant number" of jobs in the national economy. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578-79 (6th Cir. 2009).

Plaintiff's argument during the hearing bears little resemblance to the initial argument on the issue he now raises, besides the general assertion that the ALJ did not adequately address alleged inconsistencies in the job identified by the VE and Plaintiff's capabilities. The hearing testimony as to inconsistencies with the DOT actually focused on the GED reasoning level for the receptionist position (Tr. 301-03).[3] Plaintiff's representative at the hearing did not raise any inconsistency between the VE's testimony and the DOT with respect to the math level identified for the receptionist position or how that level would be inconsistent with Plaintiff's mathematical abilities. As the Commissioner asserts, the VE testified the receptionist position had a math level of two, and Plaintiff's representative did not challenge this testimony (Tr. 305). Therefore, the VE's testimony that a math level of three would equate to seventh or eighth grade is essentially irrelevant and does not create an inconsistency with Plaintiff's abilities, as the job identified has a math level of two and there was no testimony elicited during the hearing to equate this level with a particular grade level, but it would presumably be less than seventh or eighth and would presumably fall more closely in

_____

[3] Plaintiff's representative argued the reasoning level for the receptionist position was too high to accommodate Plaintiff's ability to follow only simple instructions (Tr. 301-03). The job had a reasoning level of three, and Plaintiff's representative was attempting to make the point that this identified job required an ability to follow detailed instructions as well by reading a description of the reasoning level two (which references an ability to follow detailed instructions) to contrast it with the higher reasoning level of three (Tr. 303).

line with Plaintiff's testing results.[4]  Plaintiff's argument in this regard essentially attacks an inconsistency that does not exist.

The other part of Plaintiff's argument regarding the hypothetical question and resulting testimony is more well taken.  Plaintiff argues the ALJ's reliance on the DOT was flawed because it is outdated as compared to the O*NET but, due to some concern with relying on the O*NET, this argument is better construed as an argument that the ALJ's decision is not based on substantial evidence because Plaintiff cannot perform the one job identified by the VE.  Plaintiff cited no authority for this argument, but the Commissioner noted an unpublished opinion of the Sixth Circuit, *Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010), in which the court stated as follows:

> The VE based his testimony on job descriptions contained in the Dictionary of Occupational Titles ("DOT"), a document published by the Department of Labor that was more than a decade old when the ALJ heard Cunningham's claim.  While the Social Security Commissioner does take administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted. . . . In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ--the Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continually updated based on data collection efforts that began in 2001--and that the two descriptions relied on by the VE are not found in O*NET, we conclude that the VE's dependence on the DOT listings alone does not warrant a presumption of reliability.

*Id.* at 615-16.  The *Cunningham* court remanded the case to the Commissioner for "consideration

---

[4] The testimony during the hearing was slightly confusing, as it appears the VE first testified the receptionist job had a level of three for each category, including math; however, she later testified the job had a math level of two, and this is consistent with the DOT title she referenced during the hearing (Tr. 301-05).  She did, however, testify that the level of three for each category would equate to seventh or eighth grade (Tr. 303-04).  A lower level of two would clearly equate to a lower grade level.

of whether the DOT listings. . . were reliable in light of the economy as it existed at the time of the hearing before the ALJ." *Id.* at 616. The dissent in *Cunningham* stated "[i]t is not within this reviewing court's proper authority to locate evidence it thinks ought to have been taken into account by a better informed, more thoroughly prepared expert witness, and to hold that expert's failure to consider this court's more favored data effectively nullified the 'reliability' of the expert's opinion, rendering the entire body of otherwise 'substantial evidence' suddenly insubstantial." *Id.* (Ryan, J., dissenting).

Indeed, there is some question as to whether the reviewing district court should rely upon or reference the O*NET when it is not part of the evidence contained in the administrative record. *See Reinhart v. Astrue*, 3:10CV00236 SWW, 2012 WL 811340, at *9 (E.D. Ark. Mar. 12, 2012) (refusing to consider the allegedly more reliable O*NET job description because it did not appear in the list of publications from which the ALJ can take administrative notice of job information and noting "the Court is precluded from considering anything outside the certified transcript in determining whether the ALJ's decision is supported by substantial evidence."); *see also Foster*, 279 F.3d at 357. In some cases, it appears evidence of the job descriptions in the O*NET is part of the record, as the VE relies upon O*NET information in lieu of DOT information and testifies on the basis of job descriptions found in O*NET. *See Lee v. Barnhart*, 63 F. App'x 292-93 (9th Cir. 2003) (VE relied upon O*NET classifications rather than DOT); *Moss v. Astrue*, 09-1196, 2010 WL 2572040, at *7 (C.D. Ill. June 22, 2010) (noting the VE relied upon O*NET information).

Some courts have recognized that the Office of Administrative Law Judges of the United States Department of Labor's website states that the DOT has been replaced by O*NET. *See Liveoak v. Astrue*, 11-CV-0678-CVE-TLW, 2013 WL 183710, at *12 (N.D. Okla. Jan. 17, 2013);

18

*Nottoli v. Astrue*, CIV S-09-0609 EFB, 2011 WL 675290, at *7 n.6 (E.D. Cal. Feb. 16, 2011). Other

courts have observed the Social Security Administration has not adopted the O*NET for disability

cases. "In a review requested by the SSA, it was determined that the O*NET was not suitable for

disability adjudication." *Rodriguez v. Astrue*, CV-10-0636-TUC-DTF, 2012 WL 552713, at *3 n.3

(D. Ariz. Feb. 21, 2012) (citing to the report); *see also Ricard v. Astrue,* 1:09–0008, 2009 WL

5031317, at *9 (M.D.Tenn. Dec.14, 2009) (noting that although the O*NET superseded the DOT,

"the DOT continues to be used extensively by the Social Security Administration" but plans to

replace the DOT as the "Administration's primary vocational reference source" were under way).

The Commissioner is correct that the O*NET is not a resource identified for use in the applicable

regulation, and some courts have relied on the O*NET's absence from this regulation to find that

O*NET job descriptions need not be considered. *See* 20 C.F.R. § 416.966(d); *see, e.g.*, *Hayes v.

Comm'r of Soc. Sec.*, 1:09-CV-1107, 2011 WL 2633945 (W.D. Mich. June 15, 2011) *report and

recommendation adopted*, 1:09-CV-1107, 2011 WL 2633849 (W.D. Mich. July 5, 2011). A sister

court within the Sixth Circuit noted that *Cunningham* "did not hold that the DOT is an unreliable

or out-of-date source. Rather, the court acknowledged that pursuant to the regulations the DOT is

a publication of which the ALJ may take notice. . . . Although the descriptions contained in the

O*NET are more expansive than those in the DOT, they do not raise doubts as to the reliability of

the DOT descriptions." *Earls v. Comm'r of Soc. Sec.*, 1:09 CV 01465, 2011 WL 3652435, at *7

(N.D. Ohio Aug. 19, 2011). Indeed, part of the Sixth Circuit's concern in *Cunningham* was that the

job descriptions identified by the VE did not appear in the O*NET. *Cunningham*, 360 F. App'x at

616.

  Here, the VE did not rely on the O*NET job descriptions in her testimony and the job

identified, receptionist, appears in both the DOT and O*NET. As such, I **FIND** it may not be proper to consider the O*NET job description of receptionist in this Court's review, as the O*NET description was not before the VE or the ALJ, not discussed during the hearing, not referenced in the record, and not a description of which the Commissioner may take administrative notice pursuant to the applicable regulation. Moreover, it is unclear whether the Commissioner considers the O*NET an acceptable source for occupational information upon which the VE (and the ALJ) may rely in determining an individual's disability. Furthermore, it is notable that although the Sixth Circuit took issue with the VE's reliance on the DOT listings in *Cunningham*, the Court did not hold that the entirety of the DOT was obsolete and unreliable.

Nonetheless, I **FIND** the VE's identification of a single job Plaintiff could perform did not provide substantial evidence to support the ALJ's decision under the facts in this case. That is not to say that the identification of a single job is not substantial evidence in all cases. In this case, however, the initial hypothetical question posed to the VE contained no restrictions based on Plaintiff's educational limitations, the subject of Plaintiff's other (though less defined) argument.[5] It was only further testimony from the VE which supported the inclusion of a limitation to only simple instructions in the ALJ's RFC determination. In addition, given Plaintiff's physical impairments and significant left arm problems, which the ALJ found credible to the extent that he could not use his left arm or hand for reaching or handling, I **FIND** his ability to perform the duties of the receptionist position – both physically and mentally – is not supported by substantial evidence. Although Plaintiff's representative questioned the VE extensively about various issues he identified with this job, as noted above, the ALJ did not ask many follow up questions to

_____

[5] I do not address this argument here, as it may be part of the ALJ's review upon remand.

determine whether this job would truly accommodate her RFC determination. Certainly, the ALJ need not interrogate a VE about the claimant's ability to perform the jobs identified; however, when only one job is provided, the ALJ should make an adequate inquiry to determine whether the job identified can properly be performed within the parameters of the RFC. Here, that inquiry was deficient, particularly in light of the inconsistencies raised with the DOT description during the hearing, which were not further addressed by the ALJ.[6] As such, I **CONCLUDE** the ALJ erred in reaching the conclusion that there were significant numbers of jobs in the national economy which Plaintiff could perform.[7] Accordingly, I **CONCLUDE** Plaintiff's claim must be remanded to the Commissioner for further consideration consistent with this report and recommendation.

## V.    CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[8]

> (1)    Plaintiff's motion for summary judgment [Doc. 15] be **GRANTED IN PART** and **DENIED IN PART**.

---

[6] Although I have noted the argument raised here is not a reflection of the argument raised with the ALJ, there may well be an inconsistency with respect to the GED reasoning level associated with the receptionist position and Plaintiff's abilities.

[7] On remand, it may be proper for the ALJ or the VE to consider the job descriptions in the O*NET if this is an acceptable database of job information for disability claims.

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(2)       The Commissioner's motion for summary judgment [Doc. 17] be **DENIED**.

(3)       The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE